*E-filed 5/17/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CAROLYN R. SANFORD,

      Plaintiff,

v.

LANDMARK PROTECTION, INC.,

      Defendant.

No. C 10-0447 RS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Pro se plaintiff Carolyn R. Sanford challenges termination of her employment by Landmark Protection, Inc., (Landmark) on the basis of age, sex, and disability discrimination. Sanford also brings claims for retaliation, intentional misrepresentation, and intentional infliction of emotional distress (IIED). She seeks money damages, an order reinstating her to her job, the removal of all records of disciplinary action from her employee file, and an injunction prohibiting further discrimination against her. Landmark moves for summary judgment on all claims. After oral argument and based on the entire record, for the reasons stated below, Landmark's motion for summary judgment is granted.

## II. BACKGROUND

Landmark provides on-site security services at Lawrence Berkeley National Laboratories (LBNL). Around August 2007, Landmark hired then sixty-four-year-old Sanford to work on an "at

will" basis as a security guard at LBNL. Decl. of Arlene Cahill (Cahill Decl.), at ¶ 5. Employment problems commenced when, according to Sanford, on January 8, 2008, a younger male Landmark employee suddenly replaced her on the schedule without explanation.[1] Decl. of Carolyn Sanford (Sanford Decl.), at ¶ 7. Employment problems continued when Sanford took an extended leave from work between November 2008 and approximately February 14, 2009. Cahill Decl., at ¶¶ 9, 15; Mot. for Summ. J., at 2. On February 17, 2009, Sanford received a Consolidated Omnibus Budget Reconciliation Act (COBRA) continuation coverage election notice, stating that her medical insurance coverage had been terminated on December 31, 2008 due to a reduction in employment hours. Sanford Decl., at ¶ 16, Exh. E.

Sanford resumed working forty hours per week in March 2009 and her insurance coverage was reinstated the following month. *Id.*, at ¶ 16. Landmark's Cigna and Aetna health plan terms indicate that an employee must work at least one hour in a month to qualify for health insurance benefits. Cahill Decl., Exhs. A, B. Sanford further complains that between March 2 and April 19, 2009 she was not given her typical consecutive days off from work, but was assigned separate single days off. Sanford Decl., ¶ 17, Exh. S1. Problems at work persisted when on March 18, 2009, a Landmark supervisor referred to Sanford by her true name rather than by her "call sign" on Landmark's internal radio system. *Id.*, ¶ 18. According to Sanford, this violated Landmark's radio protocols. *Id.*

Landmark took disciplinary action against Sanford following an incident that took place on April 24, 2009 (the "Blackberry Gate incident"). At approximately 1 a.m., a man appeared at Sanford's Blackberry Gate post looking for his missing wife. *Id.*, at ¶ 21. Sanford told the man she that could not admit him into LBNL and that he should call the police to report his wife missing. *Id.* Sanford was "written up" for failing to notify her shift supervisor in accordance with company

---

[1] Similarly, Sanford claims that a male in his twenties replaced her on the schedule in June 2008 and that she has knowledge of this because she was asked to "fill-in" for this man when he could not work on June 10, 2008. Sanford Decl., at ¶ 10. Landmark objects to the admissibility of this statement and others in Sanford's declaration on the following grounds: improper opinion testimony by a lay witness (Fed. R. Evid. 701); lack of personal knowledge (Fed. R. Evid. 602); improper hearsay testimony (Fed. R. Evid. 802); and relevancy (Fed. R. Evid. 402). Def.'s Objections to Sanford Decl. Landmark's objections are denied as moot, as even considering Sanford's declaration, the Court grants Landmark's motion for summary judgment.

policy, which resulted in a delay in calling the police. *Id.*, at ¶ 23, Exh. H; Cahill Decl., at ¶¶ 10-12. As a consequence, within two weeks, Sanford was moved to the day shift and her hours were temporarily cut. Cahill Decl., at ¶ 12. Lorenzo Mayfield, Sanford's male coworker who was stationed at Blackberry Gate on that night, was not disciplined following the incident. Sanford Decl., at ¶ 24.

On May 12, 2009, Sanford filed discrimination charges against Landmark with the Equal Employment Opportunity Commission (EEOC), the federal agency that administers Title VII of the Civil Rights Act of 1964. In her EEOC complaint, Sanford alleged sex, age, and disability discrimination based on the denial of consecutive days off, the supervisor's failure to use her call sign, and the Blackberry Gate incident. *See* Compl., at Exh. Q. According to Sanford, Landmark was notified of this EEOC complaint before she went on vacation the following month. *Id.*, at ¶ 28. Although she was entitled to paid vacation, Sanford's wages for those days, which were due on June 26, 2009, were not paid to her on time. *Id.* Sanford again filed charges with the EEOC, this time alleging that Landmark withheld her vacation pay in retaliation for her May 12 EEOC discrimination complaint. Sanford received her pay on August 7, 2009. Cahill Decl., at ¶ 13.

On August 12, 2009, Sanford was assigned to escort an African graduate student by driving him home in an LBNL car. Upon picking up the student, Sanford smelled cigarette smoke in the car and asked him whether he smoked. Sanford Decl., at ¶ 34. The student replied that he did not, but Sanford insisted that she smelled cigarette smoke on him. The student contacted Landmark and complained that Sanford had behaved rudely and made offensive remarks about his immigrant status and his personal hygiene. *See* Sanford Decl., at Exh. M, pp. 2-3. The student added that he would never use Landmark's escort services again if Sanford was the driver. Sanford Decl., at Exh. K. Sanford was suspended as a result of this incident. Cahill Decl., at ¶ 14. Arlene Cahill, Landmark's long-time human resources manager, called her to discuss the incident. During the phone call, Sanford revealed that her Department of Motor Vehicles (DMV) record contained a "failure to appear." *Id.*

Cahill and Joe Reilly, Landmark's security operations manager, asked Sanford to meet with them on August 17, 2009 to investigate the Blackberry Gate incident and her DMV record. Sanford

Decl., at ¶ 35.  Notes taken by Landmark during the meeting generally indicate that the conversation was heated and adversarial, with Cahill and Reilly questioning Sanford about the cigarette smell incident and about why she had not reported the mark on her DMV record.  Sanford Decl., at Exh. M.  Immediately after the talks, Sanford told Reilly that she had secretly recorded the meeting.  Cahill Decl., at Exh. I, p. 27:18-21.  At oral argument Sanford maintained that this statement was false, but that she made it so that Landmark would feel compelled to be accurate in its meeting notes, which in turn would protect her.  She was eventually asked to turn in her badge and was escorted off the property.  Cahill Decl., at ¶ 16 & Exh. M, p. 11.  Cahill wrote Sanford on August 28, 2009 to confirm that she was fired on August 17 because she: (1) discriminated against the graduate student; (2) intentionally withheld information about her DMV record and failed to keep a "clean driving record" as required by Landmark's policy; and (3) because she secretly recorded the August 17 "confidential investigation" in violation of California law.[2]  Sanford Decl., at Exh. N.  Sanford claims that she was fired in retaliation for her EEOC complaints.

After her dismissal, Sanford filed a grievance with the California Labor Commissioner, complaining that her final pay check was withheld and that she was not paid for the time she spent at the August 17 meeting.  Sanford Decl., at 11.  The Labor Commissioner denied Sanford's request for a hearing and Sanford asserts that this caused her anxiety, depression, and a multitude of related physical ailments.  *Id.*  Sanford later filed a claim for unemployment insurance benefits with the Employment Development Department (EDD).  According to Sanford, Landmark made false statements to the EDD that resulted in her unemployment insurance benefits being delayed.  Compl., at ¶ 36.  On November 5, 2009, Sanford requested that the EEOC close her pending cases and issue her "right-to-sue" letters.  Compl., at Exhs. N, O, P.  Following issuance of the letters, Sanford timely filed a complaint in this Court.

### III.  LEGAL STANDARD

In summary adjudication, the Court's function is not to determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby Inc.*, 477 U.S.

---

[2] Section 632(a) of the California Penal Code makes it a crime to intentionally eavesdrop or record any confidential communication without the consent of all parties.

242, 249 (1986).  Summary judgment is proper if the record, read in a light most favorable to the nonmoving party, demonstrates no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Liberty Lobby*, 477 U.S. at 250.  A fact is "material" if it may affect the outcome of a case under governing law.  *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1039 (9th Cir. 2000).  A factual dispute is "genuine" if there is evidence such that a verdict in favor of the nonmoving party could be reached by a reasonable jury.  *Fazio v. City & Cnty. of S.F.*, 125 F.3d 1328, 1331 (9th Cir. 1997).  In the employment discrimination context, an employee "need produce very little evidence in order to overcome an employer's motion for summary judgment."  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)) (internal quotation marks omitted).

## IV.  DISCUSSION

Sanford claims that Landmark engaged in sex discrimination against her in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 45 U.S.C. § 2000e *et seq.* (amended 1991).  She further alleges age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* (amended 1991), and disability discrimination in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 1210 *et seq.* (amended 2008).  She also avers that Landmark unlawfully retaliated against her after she filed grievances with the EEOC.  Additionally, Sanford asserts all of her employment discrimination claims under the California Fair Employment and Housing Act (FEHA), Cal. Gov. Code § 12900 *et seq.*, and brings state law claims for IIED and deceit.

A.   Sex Discrimination

Sanford claims sex discrimination in violation of Title VII[3] and California's FEHA.[4]  Employment discrimination claims are analyzed through the burden shifting procedure of

---

[3] Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" and "to limit, segregate, or classify his employees . . . in any way which would . . . adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."  §§ 2000e-2(a)(1)-(2).
[4] The FEHA protects the "opportunity to seek, obtain and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical disability,

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088-89 (9th Cir. 2008). Under *McDonnell Douglas*, an employee must first establish a prima facie case of discrimination by presenting evidence that "gives rise to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If she is successful, the burden of production, but not persuasion, shifts to the employer, who must then articulate a legitimate, nondiscriminatory reason for the challenged action. *Cordova*, 124 F.3d at 1148. Finally, if the employer meets this burden, the employee must prove, by either direct or circumstantial evidence, that the employer's stated reason for the adverse action was a pretext and that the employer's true motivation was discrimination. *Id.* at 1149-50. To establish a prima facie case, an employee must show that: (1) she belongs to a protected class; (2) she was qualified for her position and was performing her job satisfactorily; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1156 (9th Cir. 2010). These same legal standards apply to FEHA sex discrimination claims. *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007).

Sanford first complains that she was disciplined after the Blackberry Gate incident because of her sex, since a similarly situated male coworker, Mayfield, was not disciplined. According to Landmark, Sanford was disciplined because she did not contact her shift supervisor to report the incident; whereas Mayfield, in compliance with company policy, called the shift supervisor. In response to an interrogatory, Sanford admits that Mayfield in fact called the shift supervisor. The record, even when viewed in a light most favorable to Sanford, does not contain any evidence that Landmark raised her failure to comply with company policy as a pretext for sex discrimination.

Sanford next asserts that a Landmark supervisor's act of using her real name over the radio on March 18, 2009 was motivated by sex discrimination. Other than alleging that the supervisor never used the real names of male employees over the radio, Sanford offers no evidence to show that the supervisor's use of her name was anything but an accident or a mistake. Moreover, to

---

mental disability, medical condition, marital status, sex, age, or sexual orientation . . . ." Cal. Gov. Code § 12921(a).

1   establish a prima facie case, an employee must show she was subject to an adverse employment
2   action. *Davis*, 520 F.3d at 1089. In this case, Sanford does not allege that the supervisor's use of
3   her name over the radio amounted to such an action.

4   As a final point, Sanford alleges that Landmark altered her work schedule because of sex and
5   age discrimination. Namely, Sanford contends that she was hired to work forty hours per week with
6   Fridays and Saturdays off, but that on January 8, 2008, she was replaced on the schedule by a
7   younger male coworker for the day. She adds that she was taken off the schedule or had her work
8   hours reduced without any explanation between June 3 and June 6, 2008, and that at some point she
9   was denied consecutive days off. Sanford also claims that in June 2008, a man in his twenties
10  started working her forty-hour schedule, and that she has knowledge of this because she was asked
11  to "fill-in" for this man when he could not work on June 10, 2008.

12  It is undisputed that Sanford's forty hour schedule was restored in March 2009. Sanford,
13  however, protests that when her full-time schedule was restored, she was denied Fridays and
14  Saturdays off, and had to work seven days a week to achieve a forty hour work week. Landmark
15  argues that Sanford never asked to have her consecutive days off reinstated after she resumed
16  working full-time and Sanford does not dispute this contention. According to Landmark, this raises
17  the question of how she "could be denied something that she never asked for or was entitled to."
18  Before her schedule was restored to forty hours per week, Sanford had taken a three to four month
19  leave. According to Landmark, when she came back to work, the company's legitimate scheduling
20  needs prompted the change from her prior schedule. Other than stating that a younger man replaced
21  her on the schedule, Sanford presents no evidence to show that any change to her schedule was due
22  to discrimination or that any similarly situated individual was treated more favorably.

23  In summary, although Sanford need produce very little evidence to overcome Landmark's
24  motion, what she does present fails to give rise to any inference of unlawful discrimination. Sanford
25  has not established a prima facie case of sex discrimination with respect to any of the incidents of
26  which she complains. Since a trial would serve no useful purpose, Landmark's request for summary
27  judgment on the sex discrimination claim is granted.

28

B.     Age Discrimination

Sanford also claims that Landmark discriminated against her on the basis of her age in violation of the ADEA,[5] as well as California's FEHA.  To establish an ADEA violation, an employee must prove age was a "determining factor" in an adverse employment action, such that she would not have been adversely affected "but for" the employer's motivation to discriminate because of age.  *Kelly v. Am. Standard, Inc.*, 640 F.2d 974, 984 (9th Cir. 1981).  The analysis of an ADEA claim is the same as the analysis of a Title VII claim.  *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 888-89 (9th Cir. 1994).  Thus, Sanford must prove age discrimination under the three-step burden shifting test of *McDonnell Douglas*.  *Id.* at 889.  To establish a prima facie case, she must demonstrate that: (1) she belongs to the protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a sufficiently younger employee with equal or inferior qualifications.  *Id.* at 891.  Failure to produce specific facts that establish the existence of a prima facie case renders a grant of summary judgment appropriate.  *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1409 (9th Cir. 1987) (discussing standard in Title VII context).  These rules apply equally to age discrimination claims brought under the FEHA.  *See Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 354 (2000) (explaining that "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination, based on a theory of disparate treatment").

It is undeniable that Sanford belonged to a protected class within the meaning of the ADEA and that she suffered an adverse employment action.  *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (stating that "a wide array of disadvantageous changes in the workplace constitute adverse employment actions").  Here, Sanford's work hours were reduced and her pay was cut following the Blackberry Gate incident.  She was ultimately fired.

---

[5]  The ADEA prohibits employment discrimination by employers with twenty or more employees against people aged forty or older.  §§ 631(a)-(b).  The Act's purposes are to promote the employment of older persons based on their ability rather than age, and to "prohibit arbitrary age discrimination in employment."  § 621(b).  Specifically, the ADEA provides that it is unlawful for an employer to fail or refuse to hire or to discharge or discriminate against any employee with respect to his or her compensation, terms, conditions, or privileges of employment, because of such employee's age.  § 623(a).

Landmark argues that Sanford did not perform her job satisfactorily and was fired for cause. In particular, one of the causes was the cigarette smell incident. Landmark disciplined Sanford by suspending her and eventually firing her after this encounter. Sanford disagrees with Landmark's assertion that she did not perform her job satisfactorily. According to her, the fact that she was a Landmark security guard and "had no accidents while employed with Landmark" shows that she performed her job satisfactorily. Nonetheless, it is undisputed that Sanford behaved improperly while escorting the graduate student and therefore did not perform her job in a satisfactory manner. Thus, Landmark had a legitimate, nondiscriminatory business reason for discharging her: she acted in an offensive manner toward one of Landmark's clients who complained that he would never use Landmark's escort service again if Sanford was the driver. Consequently, Sanford's job performance was not satisfactory and she is unable to establish a prima facie case of age discrimination. As such, Landmark's motion for summary judgment is granted.

C.  Disability Discrimination

Sanford next claims disability discrimination in violation of the ADA[6] and California's FEHA. Under the ADA, an employer is liable when an employee's disability was "a motivating factor" of an adverse employment action. *See Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005). If the employer relies on nondiscriminatory reasons for the adverse action, then the pretext analysis from *McDonnell Douglas* applies.[7] *See Snead v. Metropolitan Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). To establish a prima facie case of discrimination, Sanford must establish that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) the employer discriminated against her because of her disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (citing the ADA). FEHA disability discrimination claims are

---

[6] Broadly, the ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability." § 12112(a).
[7] If the employer instead acknowledges that the disability was a factor in the employment action, then it must show that the disability is relevant to the requirements of the position. *Snead*, 237 F.3d at 1093 n.10 (citing *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1176 (9th Cir. 1998).

analyzed under the same framework. *Brundage v. Hahn*, 57 Cal. App. 4th 228, 235 (1997); *Caldwell v. Paramount Unified School Dist.*, 41 Cal. App. 4th 189, 195 (1995).

Sanford claims that she is disabled and that Landmark knew about her disability prior to hiring her. For purposes of this motion, the Court assumes without finding that Sanford is disabled within the meaning of the ADA and the FEHA. Sanford admits that she did not seek any accommodations for her disability and Landmark does not argue that she could not perform the essential functions of her job without reasonable accommodation. Thus, the only question here is whether Landmark discriminated against Sanford because of her disability. Sanford argues that Landmark discriminated against her because she lost her employer-sponsored health insurance plan while taking a disability leave between November 2008 and February 14, 2009.

Landmark rejects any notion of discrimination and instead maintains that pursuant to its health insurance contract, if an employee fails to work at least one hour per month, that employee will not receive medical benefits for the following month. The terms of Landmark's Cigna and Aetna health plans confirm that requirement and Sanford acknowledges that she failed to work the requisite minimum one hour in at least December and January. In fact, she puts forth as evidence a notice which states that, because she had not worked the requisite number of hours, her health insurance had been terminated. The notice also informed her that she could continue her coverage under COBRA. There is no dispute that Sanford's health insurance was restored after she resumed work for Landmark, and likewise, no genuine dispute that the cancellation of her health insurance was caused by her failure to work the required one hour per month.

As to whether Landmark knew that Sanford was disabled, Landmark denies having such knowledge and claims that at no time did it "perceive Ms. Sanford to have a disability that impacted a major life function." Sanford claims that she informed Landmark she was disabled in a pre-employment questionnaire, but Landmark's employment application does not ask applicants whether they are disabled. Other than claiming that she made that representation in the questionnaire, Sanford puts forth no evidence to show that Landmark knew she was disabled. Nor does she claim that she requested or informed Landmark that she was taking a disability leave. In this context, Landmark could not have discriminated against Sanford unless it knew that she was

disabled. *See*, *e.g.*, *Nunes*, 164 F.3d at 1246 (citing the ADA); *Brundage*, 57 Cal. App. 4th at 236-37 (affirming summary judgment on an employee's ADA and FEHA disparate treatment claims because the employer could not have discriminated on the basis of a disability of which it did not know).

Sanford cannot show that Landmark knew of her disability. Even if she did make such a showing, she cannot demonstrate that Landmark discriminated against her because of it. Landmark's motion for summary judgment is therefore granted.

D. <u>Retaliation</u>

Sanford further claims that Landmark retaliated against her after she filed complaints with the EEOC.[8] Sanford's retaliation claim, brought under Title VII, is also subject to the *McDonnell Douglas* framework. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003) (*citing Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)). An employee must first make out a prima facie case of retaliation by establishing: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the activity and the employment action. *Nilsson v. City of Mesa*, 503 F.3d 947, 953-54 (9th Cir. 2007). If an employee establishes a prima facie case, the employer must articulate a legitimate and nonretaliatory reason for its actions. *Id.* The burden then shifts back to the employee, who must prove that the employer's reason is a pretext. *Id.*

Sanford brings three retaliation claims. First, she claims that she was terminated because of retaliation. Landmark does not advance any arguments against Sanford's prima facie case in this instance, but instead proposes that she cannot prove her termination was a pretext for a retaliatory motive. Landmark claims that it terminated Sanford, among other things, because of the cigarette smell incident. As discussed above, Landmark has established that this incident amounts to a legitimate reason for termination. Although the burden shifts to Sanford, she offers no evidence

---

[8] Under section 704 of the Civil Rights Act of 1964, it is unlawful "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-(3)(a) (2000). This provision aims "to prevent employer interference with unfettered access to Title VII's remedial mechanisms." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

1  supporting her conclusion that Landmark was motivated by an intent to retaliate in terminating her
2  employment. *See*, *e.g.*, *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 n.10 (9th Cir.
3  2002) (retaliation case fails where plaintiff does not demonstrate pretext).

4  Sanford also claims that an incident where Landmark "forced" her to sign a blank form
5  demonstrates retaliation. Landmark asserts that the form in question was a training recertification
6  form and argues that the signing of it does not constitute an adverse employment action. Sanford
7  does not allege a single fact to show that her signature on this form adversely affected her
8  employment. Without more, Sanford cannot meet the "adverse employment action" requirement for
9  establishing a prima facie case. *See Nilsson*, 503 F.3d at 953-54.

10  Lastly, Sanford claims that a delay in receiving her vacation pay was provoked by
11  retaliation. Sanford filed a discrimination complaint with the EEOC on or about May 12, 2009 and
12  on June 26, she was not forwarded her vacation pay. On July 21, Sanford again filed retaliation
13  charges with the EEOC, this time because of Landmark's delay in paying her. Sanford claims that
14  Landmark received notice of her July 21 EEOC complaint on August 1. Landmark finally paid her
15  on August 7. Assuming that Sanford can establish a prima facie case, the burden of production
16  devolves upon Landmark to articulate some legitimate, nonretaliatory reason for the delay in her
17  pay. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

18  Landmark acknowledges that Sanford's vacation pay was delayed, but maintains that this
19  was the result of an administrative mistake by Cahill, who misplaced some paperwork which caused
20  the delay in paying Sanford. It is undisputed, however, that Sanford received several direct deposits
21  for her regular wages during the same period in which her vacation pay was delayed. *See* Decl. of
22  Juliana Kresse in Supp. of Landmark's Mot. for Summ. J., at Exh. D (Interrog. No. 19). According
23  to Landmark, this fact points to a lack of a retaliatory motive and shows that its delay in paying
24  Sanford was caused by an administrative mistake. Assuming that the delay constituted an adverse
25  employment action, Sanford must still show that Landmark's proffered nonretaliatory explanation
26  was a pretext, but she makes no such showing. Therefore, Landmark's request for summary
27  judgment with respect to the retaliation claim is granted.

28

E.   IIED

Sanford brings a state law claim for IIED.  In California, the essential elements of an IIED claim are: (1) outrageous conduct; (2) intention of causing, or reckless disregard of the probability of causing emotional distress; (3) severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  *Girard v. Ball*, 125 Cal. App. 3d 772, 786 (1981).  "Generally, conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  *KOVR-TV, Inc. v. Superior Court*, 31 Cal. App. 4th 1023, 1028 (1995) (internal citation omitted).

In this case, Sanford claims that the lapse in her medical insurance, the supervisor's failure to use her call sign, the Blackberry Gate incident, the delay in her vacation pay, and being forced to sign a blank form amount to IIED.  Landmark argues that, even if it subjected Sanford to "unpleasant or annoying events at work," these events, singly or in combination, do not rise to the level of outrageous conduct to support sufficiently an IIED claim.  Furthermore, Sanford asserts that the incidents of which she complains caused her stress, anxiety, depression, and a multitude of other physical symptoms.  She did not seek medical treatment for her emotional distress while employed at Landmark, but rather, she states that she started taking medication as result of the Labor Commissioner's act of denying her a hearing after she had already been terminated.  In reading the facts in the light most favorable to Sanford, she does not establish the elements of an IIED claim as a matter of law.  Accordingly, Landmark's request for summary judgment is granted.

F.   Deceit

Finally, Sanford complains that Landmark made a false statement to the Labor Commissioner when it stated that she "was paid her final check via direct deposit on August 21, 2009 and her paycheck stub was mailed to her address . . . ."  Sanford also claims that Landmark's statement to the EDD that she was fired for offending the graduate student and for having a mark on her DMV record resulted in a delay in her unemployment compensation.  Sanford asserts that these acts amount to deceit; Landmark's motion treats these allegations as a claim for intentional misrepresentation.

California law defines deceit as, in relevant part, "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true[,] or [t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true. . . ." Cal. Civ. Code § 1710; *Intrieri v. Superior Court*, 117 Cal. App. 4th 72, 86 (2004). Intentional misrepresentation is a form of fraud. *See*, *e.g.*, *Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 101, n.7 (2008) (citing § 1710). Fraud, in turn, "is an intentional tort, the elements of which are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Intrieri*, 117 Cal. App. 4th at 85-86 (*quoting Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 200 (1986)). To be actionable, both deceit and intentional misrepresentation require that a defendant have made a false statement. *See id.* As Landmark asserts, and the evidence shows, Landmark's statements to the Labor Commissioner and to the EDD were true. Sanford does not attempt to show that Landmark made any false statements or rebut its assertion that its statements were true. As a result, Landmark's request for summary judgment on this claim must be granted as well.

## V.  CONCLUSION

Landmark's motion for summary judgment is granted as to all claims.

IT IS SO ORDERED.

Dated: 5/16/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**THIS IS TO CERTIFY THAT A COPY OF THIS ORDER WAS MAILED TO:**

Carolyn R. Sanford
4432 Wall Street
Richmond, CA 94804

Dated:  5/17/11                              /s/ Chambers Staff

                                               Chambers of Judge Richard Seeborg